ADAM KAMENSTEIN (SBN 225921)
ALEC JOHNSON (SBN 270960)
**ADAMS, DUERK & KAMENSTEIN LLP**
445 S. Figueroa St., Ste. 2450
Los Angeles, California 90071
Tel: (213) 408-4085
Email: adam.kamenstein@adkfirm.com
alec.johnson@adkfirm.com

LEO KITTAY (pro hac vice)
**FROSS ZELNICK LEHRMAN & ZISSU, P.C.**
151 W. 42nd Street, 17th Floor
New York, New York 10036
Tel: (212) 813-5900
Email: lkittay@fzlz.com

*Attorneys for Plaintiffs*

RYAN J. STONEROCK (SBN 247132)
HENRY L. SELF III (SBN 223153)
HARDER STONEROCK LLP
6300 Wilshire Blvd., Suite 640
Los Angeles, California 90048
(424) 203-1600
Email: RStonerock@HarderStonerock.com
HSelf@HarderStonerock.com

*Attorneys for Defendant*
Cool Freakin' Genius LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TIGI LINEA CORP., TIGI HOLDINGS LTD., and ELIDA BEAUTY US (IP) LLC,<br><br>Plaintiffs,<br><br>v.<br><br>COOL FREAKIN' GENIUS LLC,<br><br>Defendant. | Case Number: 2:25-cv-10761-ODW-ASx<br><br>**JOINT RULE 26(f) REPORT**<br><br>Complaint filed November 7, 2025<br><br>Hon. Otis D. Wright II |

Pursuant to the Court's September 28, 2026 Order (Dkt. 52), Federal Rule of Civil Procedure 26, and Local Rule 26-1, Plaintiffs TIGI Linea Corp., TIGI Holdings Ltd., and Elida Beauty US (IP) LLC, ("Plaintiffs" or "TIGI") and Defendant Cool Freakin' Genius LLC ("Defendant" or "CFG" and, with Plaintiffs, the "Parties") jointly submit this Rule 26(f) Report. In accordance with Rule 26(f), the Parties' counsel conducted a conference in this matter on October 15, 2026.

## I. BRIEF FACTUAL AND PROCEDURAL SUMMARY OF THE CASE

### A. Plaintiffs' Statement

Kyara and Bruno Mascolo co-founded, with others, the BED HEAD brand in or around 1996. They sold the brand to Unilever in 2009 for over $410M. Unilever subsequently sold the brand to TIGI Linea Corp. In July 2025, the Mascolos, through CFG, launched a new haircare product line named COOL FREAKIN' GENIUS.

For decades, BED HEAD brand's vibrant and visually striking packaging has been its calling card. No other haircare brand on the market uses such a multitude and range of bright fluorescent colors for its bottles, such contrasting colors for its bottle tops, and such an array of unusual bottle shapes, together with irreverent and provocative product names and strong fragrances.

TIGI maintains CFG's haircare product packaging infringes TIGI's trademark rights, including its trade dress rights across its entire line, its SMALL TALK product and its QUEEN FOR A DAY product. The elements of the Bed Head Trade Dress are: (1) a product line composed of an array of bottles that feature many vibrant fluorescent colors across the color spectrum; (2) each bottle has a single, solid color and each cap/actuator has a single, solid color that is fluorescent or metallic and that sharply contrasts with the bottle color (*e.g.*, magenta/yellow, pink/green, blue/yellow, green/silver); (3) a product line punctuated by several different bottle shapes that feature fanciful, symmetrical, 360-degree curves (*e.g.*, spherical pump bottles, vase-shaped pump bottles, and tall bottles with a 360-

degree, rounded indent below the top quarter of the bottle); (4) a two-word, two-line, irreverent, primary trademark typically on the upper half of the bottle and typically in a black or white typeface; and (5) an irreverent and provocative product name in all capital letters featured prominently at or just below the middle of the bottle in a solid color (the "Bed Head Trade Dress").

The elements of the SMALL TALK packaging are: (1) spherical, (2) light purple bottle with (3) a yellow pump with visible spiral threading, (4) a bottle that prominently displays the two-word, two-line, bold, irreverent, primary trademark, and (5) an irreverent and provocative product name featured prominently in all capital, sans-serif letters in a two-line display (the "Small Talk Trade Dress"). The elements of the QUEEN FOR A DAY packaging are: (1) a metallic, fluorescent light purple bottle color, (2) a contrasting, fluorescent yellow cap/actuator, (3) a 360-degree, rounded indentation within the top third of the bottle, (4) a two-word, two-line, bold, irreverent, primary trademark centered on the bottle, at or just above the bottle's midline, (5) an irreverent and provocative product name in all capital, sans-serif letters featured prominently in a two-line display on the lower half of the bottle, and (6) a product name that features "Queen" as the most prominent term within the product name (the "Queen for a Day Trade Dress"; together with the Bed Head Trade Dress and the Small Talk Trade Dress, the "Bed Head Trade Dresses").

Those who encounter Defendant's packaging and product names (collectively, the "CFG Packaging") have already mistakenly believed that Defendant's products are related to, affiliated with, or put out by TIGI. CFG's marketing has exacerbated the likelihood of confusion. CFG's own website has displayed BED HEAD products, referenced the BED HEAD brand and mark by name, explained that CFG's founders created the BED HEAD brand, and boasts, "Kyara Mascolo and Bruno Mascolo have done it again!!" The CFG Packaging has caused immediate and irreparable harm to TIGI, threatens to deceive the public, and

has already caused actual confusion. For example, one beauty influencer told her over 90,000 followers that CFG's product line is "BED HEAD's new brand."

TIGI therefore brings this action for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and related claims of false advertising and unfair competition under California common law and statutory law. TIGI seeks relief including, *inter alia*, an order for permanent injunctions, treble damages and profits, actual damages, prejudgment interest, and attorneys' fees and costs, pursuant to 15 U.S.C. § 1117, *et seq*. Unless permanently enjoined, Defendant's conduct will injure both TIGI and the public.

**B. Defendant's Statement**

CFG denies that it has infringed any protectable trade dress or engaged in false advertising or unfair competition.

CFG's founder and chief executive officer, Kyara Mascolo, has more than 30 years of experience in the professional beauty industry. CFG has sold cosmetics under its FREAKIN' GENIUS brand since 2015, and, after the expiration of Ms. Mascolo's 10-year non-compete following the 2009 sale of the BED HEAD brand, CFG launched a professional haircare line in the summer of 2025. CFG's haircare products are sold exclusively through professional salons to stylists and their clients, at price points well above BED HEAD, which is sold principally through mass-market retail channels. Every CFG product prominently bears CFG's own house mark.

Plaintiffs assert three unregistered trade dresses and bear the burden of proving that each is valid and protectable. CFG contends that none is.

First, the asserted trade dresses lack secondary meaning. The Bed Head Trade Dress is not the packaging of any single product; it is a claimed "look" for an entire product line, defined by generalized design concepts—bright colors, contrasting closures, curved bottle shapes, a two-line house mark, and irreverent product

names—that vary from product to product. Such a claimed design cannot be inherently distinctive, and Plaintiffs must prove that, before CFG entered the market, consumers recognized each claimed combination as identifying a single source. *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 212–16 (2000).

Second, CFG contends that the claimed elements—vivid colors, contrasting closures, rounded bottles, and playful product names—are perceived by haircare consumers as characteristic of the category rather than as identifying TIGI as a source, and are therefore generic. Whether trade dress is generic turns on how the relevant public perceives it. *See USPTO v. Booking.com B.V.*, 591 U.S. 549, 560 (2020).

Third, the asserted elements are functional, both in the utilitarian sense (for example, colors and contrasting closures that aid quick product identification at the salon station, and contoured, wide-based bottles that are easier to grip with wet hands and less likely to tip) and in the aesthetic sense, because exclusive rights in a bright, colorful category aesthetic would put competitors at a significant non-reputation-related disadvantage. *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32–33 (2001); *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062 (9th Cir. 2006). Because the asserted trade dresses are unregistered, Plaintiffs bear the burden of proving nonfunctionality. 15 U.S.C. § 1125(a)(3). The Court's findings on these issues at the preliminary injunction stage were made on a preliminary record and are not binding at trial. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

Even if any asserted trade dress were protectable, there is no likelihood of confusion. CFG's products are sold in a different channel, at different price points, to sophisticated salon professionals and their clients, under a prominent and distinct house mark. Plaintiffs' anecdotal evidence and survey do not show actual confusion among relevant purchasers. CFG also denies Plaintiffs' false advertising and related state-law claims: truthful statements about the history of CFG's founders, including

that they created the BED HEAD brand—a fact Plaintiffs acknowledge above—are neither false nor misleading. CFG further disputes that Plaintiffs suffered any cognizable damages, that any profits are attributable to the alleged infringement, that any basis exists for enhanced damages, attorneys' fees, or permanent injunctive relief, and that each of the three Plaintiffs owns the asserted trade dresses or has standing to assert the claims.

Following entry of the Preliminary Injunction, CFG complied with it. CFG stopped selling the enjoined packaging and redesigned its entire haircare line, eliminating the features on which the Court's preliminary similarity findings rested. CFG has not sold any redesigned product. As used in this Report, "CFG Packaging" refers to the packaging at issue in the Preliminary Injunction, not CFG's redesigned packaging. As noted below, Ms. Mascolo will be moving for clarification that the redesigned packaging falls outside the scope of the Preliminary Injunction.

### C. Procedural History

The Court entered a preliminary injunction in this matter on January 12, 2026. (ECF 38.)

On February 5, 2026, CFG filed a voluntary bankruptcy petition, commencing the chapter 11 bankruptcy case known as *In re Cool Freakin' Genius LLC*, 2:26-bk-11023-BB, which is currently pending in the United States Bankruptcy Court for the Central District of California. The Bankruptcy Court entered an order granting relief from the automatic stay upon a stipulation among the Parties. (ECF 51.)Following relief from the automatic stay, this Court ordered the Parties to submit this Report. (ECF 52.)

The Parties agree that this Court has subject matter jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331 and 1338(a) and (b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) & (b).

///

///

## II. LEGAL ISSUES

The principal legal issues in this matter thus far are as follows:

**Plaintiffs' Position:**

- Whether Defendant has infringed Plaintiffs' trademark rights in the Bed Head Trade Dress by creating a likelihood of consumer confusion and thereby causing monetary and non-monetary harm to Plaintiffs, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).
- Whether Defendant has infringed Plaintiffs' trademark rights in the Queen for a Day Trade Dress by creating a likelihood of consumer confusion and thereby causing monetary and non-monetary harm to Plaintiffs, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).
- Whether Defendant has infringed Plaintiffs' trademark rights in the Small Talk Trade Dress by creating a likelihood of consumer confusion and thereby causing monetary and non-monetary harm to Plaintiffs, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).
- Whether Defendant, or any of its agents, engaged in any conduct that constitutes false or misleading advertising, as prohibited by Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).
- Whether Defendant, or any of its agents, engaged in any conduct that constitutes unfair competition in violation of California common law.
- Whether Defendant, or any of its agents, used any unlawful, unfair, or fraudulent business practice or engaged in any unfair, deceptive, untrue, or misleading advertising, as prohibited by the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq., and therefore violated the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.

- Whether Defendant, or any of its agents, made, disseminated, or caused to be disseminated in an advertisement any statement about Plaintiffs which is untrue or misleading or which, through the exercise of reasonable care, Defendant should have known to be untrue or misleading, and therefore violated the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.
- What damages and other monetary relief, if any, Plaintiffs have suffered as a result of Defendant's alleged conduct.
- What permanent injunctive relief is appropriate.

**Defendant's Position:** In addition to the issues identified by Plaintiffs, CFG contends that the principal legal issues include:

- Whether the Bed Head Trade Dress, Queen for a Day Trade Dress, and/or Small Talk Trade Dress are legally protectable under federal or California law, including:
    - whether they are adequately defined, including whether the Bed Head Trade Dress, which is claimed across a product line, presents a consistent overall appearance;
    - whether they are distinctive, including whether Plaintiffs can prove that each had acquired secondary meaning before CFG entered the market, and whether the asserted trade dresses must be treated as product design, which cannot be inherently distinctive;
    - whether they are generic, including whether the relevant consuming public perceives the claimed elements as characteristic of haircare packaging generally rather than as identifying a single source; and

///

///

  - whether they are nonfunctional, in either the utilitarian or the aesthetic sense, which Plaintiffs must prove under 15 U.S.C. § 1125(a)(3).

- If they are protectable, whether Plaintiffs possess any trademark rights in the Bed Head Trade Dress, Queen for a Day Trade Dress, and/or Small Talk Trade Dress, and whether each Plaintiff has standing to assert the claims pleaded.
- Whether the statements on which Plaintiffs' false advertising and related state-law claims rest are true, are statements of fact, and were made in commercial advertising or promotion.
- Whether Plaintiffs can prove any actual damages, any profits attributable to the alleged infringement, or any entitlement to enhanced damages or attorneys' fees, and the treatment of any monetary award in light of the Bankruptcy Proceeding.

## III. DISCOVERY PLAN PURSUANT TO RULE 26(f)(3)

Pursuant to Rule 26(f)(3), the Parties' views and proposals regarding the discovery plan in this matter are as follows:

The Parties intend to seek discovery using the methods permitted in the Federal Rules of Civil Procedure, including oral depositions, written interrogatories, document requests, and requests for admission, and agree that service by email is acceptable.

### A. Timing of Initial Disclosures

The Parties agree that no changes should be made in the timing, form, or requirement for disclosures under Rule 26(a). The Parties will make their respective initial disclosures within **14 days after the Rule 26(f) conference of counsel** per Rule 26(a)(1)(C).

///

///

### B. Discovery Subjects

**Plaintiffs' Position:** The subjects on which discovery may be needed will partially depend on the Defendant's affirmative defenses, which were pled without any details. If any supporting facts are produced, this may expand the issues for which discovery will be appropriate.

Subject to the foregoing, Plaintiffs believe the general subjects on which discovery may be needed include:

- General business of Plaintiffs;
- Plaintiffs' adoption and ownership of the Bed Head Trade Dresses;
- Plaintiffs' business practices concerning the Bed Head Trade Dresses;
- Plaintiffs' goods featuring the Bed Head Trade Dresses;
- Plaintiffs' sales and advertising expenditures concerning the Bed Head Trade Dresses;
- Plaintiffs' advertising, marketing, and promotion of goods featuring the Bed Head Trade Dresses;
- trade channels through which goods featuring the Bed Head Trade Dresses travel;
- categories of consumers of goods featuring the Bed Head Trade Dresses;
- reputation and consumer recognition of the Bed Head Trade Dresses;
- enforcement of the Bed Head Trade Dresses;
- marketplace confusion resulting from the CFG Packaging and Defendant's marketing and promotion related to its products;
- the likelihood of injury to Plaintiffs posed by the CFG Packaging;
- Defendant's and its founders' prior connections, employment, and contracts with Plaintiffs and their predecessors-in-interest;
- Defendant's conception, design, adoption, and use of the CFG Packaging;

- Defendant's prior knowledge of Plaintiffs and the Bed Head Trade Dresses;
- The nature of Defendant's goods;
- Defendant's plans for expansion of goods and services offered or intended to be offered in connection with the CFG Packaging;
- Defendant's trade channels for goods offered or intended to be offered using the CFG Packaging;
- The consumers and categories of consumers for goods offered or intended to be offered in connection with the CFG Packaging;
- Defendant's sales, advertising, advertising expenditures, and market share in the United States (if any) for goods offered or intended to be offered in connection with the CFG Packaging;
- Defendant's intent to reference, trade on, advertise, and market its past relationship with Plaintiffs and their predecessors in interest;
- Defendant's research and clearance conducted done in connection with adopting the CFG Packaging; and
- Defendant's decision and basis to file for bankruptcy and put in place a bankruptcy plan.

**Defendant's Position:**

CFG anticipates discovery on, among other subjects:

- the creation, design, and evolution of the BED HEAD packaging, including changes over time in bottle colors, shapes, and closures, house-mark presentation, and product-name treatment, and whether the asserted trade dresses have been used consistently across the BED HEAD line;
- the selection and sourcing of BED HEAD bottles and closures, including whether they are stock or vendor-supplied designs available to other brands;

- the utilitarian and aesthetic purposes of the asserted elements, including advertising and internal documents addressing their usefulness or appeal;
- whether Plaintiffs have promoted the asserted trade dresses as source identifiers, including any "look-for" advertising;
- consumer surveys, market research, and other evidence bearing on whether, and as of what date, consumers associate the asserted trade dresses with a single source;
- third-party use of bright or fluorescent colors, contrasting closures, rounded or contoured bottles, and irreverent product names in the haircare and beauty categories;
- Plaintiffs' ownership of and chain of title to the asserted trade dresses, including transfers from Unilever and among Plaintiffs, and any licenses;
- Plaintiffs' trade channels, customers, and price points, including the extent of BED HEAD sales through professional salons;
- Plaintiffs' evidence of alleged actual confusion and the design and execution of any surveys;
- the alleged falsity of any statement challenged in Plaintiffs' false-advertising claims;
- Plaintiffs' claimed damages, including BED HEAD sales and market-share trends before and after CFG's launch;
- Plaintiffs' enforcement of the asserted trade dresses against third parties; and
- Plaintiffs' communications concerning CFG and its products, including with the influencer referenced in Plaintiffs' Statement and concerning CFG's redesigned packaging.

CFG objects to Plaintiffs' proposed discovery into "Defendant's decision and basis to file for bankruptcy and put in place a bankruptcy plan." Those matters are not relevant to any claim or defense in this action, are committed to the Bankruptcy Court, and implicate privileged communications.

CFG objects to discovery into the finances of CFG's members or other non-parties, which is not relevant to any claim or defense; any discovery from non-parties must proceed under Rule 45.

The scope of discovery does not turn on CFG's affirmative defenses: distinctiveness and nonfunctionality are elements of Plaintiffs' claims on which Plaintiffs bear the burden of proof. In any event, CFG "state[s] in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A); *see* Dkt. 37 at 27:26–29:22. "[T]he fair notice required by the pleading standards only requires describing the defense in general terms." *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) (citation and quotations omitted).

**C. Schedule for Completion of Discovery**

The Parties have completed the below timetable of events reflecting relevant deadlines in this matter.

| Deadline | Parties' Joint Request |
|---|---|
| Last Date to Hear Motions to Amend Pleadings or Add Parties | January 11, 2027 |
| Close of Fact Discovery | April 16, 2027 |
| Expert Disclosure (Initial) | April 23, 2027 |
| Expert Disclosure (Rebuttal) | May 7, 2027 |
| Close of Expert Discovery | May 14, 2027 |
| Last Date to Conduct Settlement Conference | June 14, 2027 |
| Last Date for Hearing Motions | June 21, 2027 |

| | |
|---|---|
| Deadline to File Pre-Trial Documents | August 2, 2027 |
| Deadline to File Motions in Limine | August 4, 2027 |
| Pretrial Conference | August 9, 2027 |
| Hearing on Motion in Limine | August 23, 2027 |
| Last Date to File Final Trial Exhibit Stipulation | August 26, 2027 |
| Trial Date | August 31, 2027 |

**D. Discovery Phases**

The Parties do not propose that discovery should be conducted in phases or be limited to or focused upon particular issues.

**E. Issues About Disclosure, Discovery, or Preservation of Electronically Stored Information**

The Parties propose that, by **November 23, 2026**, the Parties will enter into a stipulated agreement governing discovery of electronically stored information.

**F. Issues About Claims of Privilege**

The Parties are not currently aware of any special issues about claims of privilege or of protection of trial-preparation materials, but they reserve all rights in that regard. Privilege logs need not include documents created after the filing date of this action. To the extent either Plaintiffs or Defendant assert privilege with respect to other matters, they must be logged in the usual manner. The Parties will likely address issues concerning inadvertent waiver of privilege in the stipulated Protective Order discussed below.

**G. Proposed Limitations or Modifications of the Discovery Rules**

The Parties seek no modification of the federal discovery rules.

**H. Other Discovery Orders**

The Parties anticipate they will enter into, and will request the issuance of, a stipulated Protective Order to protect the confidentiality of, and to prohibit the

unauthorized use of, any confidential information that may be required to be disclosed during discovery. The Parties propose that they meet and confer on a proposed Stipulation and Protective Order and jointly submit the Proposed Protective Order to the Court by **November 23, 2026**. Apart from the Protective Order, the Parties do not request any discovery orders at this time.

**I. Evidence Preservation**

**Plaintiffs' Position:** Plaintiffs have a litigation hold in place and have and will continue to honor their preservation obligations.

**Defendant's Position**: CFG is complying and will continue to comply with evidence preservation obligations.

**J. Complex Cases**

The Parties agree that this case does not qualify as "complex" so as to implicate the procedures of the Manual for Complex Litigation.

**IV. ALTERNATIVE DISPUTE RESOLUTION**

The Parties discussed settlement, in person, several times since this Court issued a preliminary injunction. As part of the Bankruptcy Case, on July 9, 2026, the Parties engaged in a full-day mediation presided over by the proceeding's Subchapter V Trustee. In attendance were principals from both sides.

The Parties have been unable to reach a resolution but remain open to settlement. Accordingly, the Parties have met and conferred pursuant to Local Rule 16-15.4 and elect ADR PROCEDURE NO. 3.

CFG believes that a ruling on Ms. Mascolo's forthcoming motion for clarification of the Preliminary Injunction would materially assist the Parties' settlement discussions.

**V. TRIAL ESTIMATE**

Based on the information now available, the Parties anticipate that trial will last three to four (3–4) days. All Parties have requested a jury trial in this matter.

///

## VI. EXPERT WITNESSES

The Parties agree to the disclosure of expert witnesses in accordance with Federal Rule of Civil Procedure 26(a)(2). The proposed deadlines for disclosing expert testimony are set forth in the table above.

## VII. AMENDMENT TO PLEADINGS / ADDITIONAL PARTIES

**Plaintiffs' Position:** Plaintiff anticipates filing a motion to add as defendants CFG Founder Kyara Mascolo, her husband CFG Founder Bruno Mascolo, and a related family trust, all of which Plaintiffs contend have funded CFG throughout its bankruptcy.

## VIII. ANTICIPATED MOTIONS

**Plaintiffs' Position**: Plaintiffs' anticipated motion to add parties is addressed above. Plaintiffs also anticipate moving for summary judgment.

**Defendant's Position**: Non-party Kyara Mascolo, CFG's founder and chief executive officer, will be filing a motion for clarification of the Preliminary Injunction, asking the Court to confirm that CFG's redesigned packaging falls outside its scope. Before filing, Ms. Mascolo's counsel provided Plaintiffs with images of each redesigned product and asked whether Plaintiffs agree that the redesigned packaging falls outside the Preliminary Injunction. At a conference of counsel under Local Rule 7-3 on October 12, 2026, Plaintiffs stated that they do not agree and will oppose the motion. CFG has not sold any redesigned product and will not do so pending the Court's ruling.

CFG also anticipates moving for summary judgment, including on whether the asserted trade dresses are protectable.

## IX. CASE MANAGEMENT

The Parties do not see an immediate need for a case management conference.

## X. SEVERANCE, BIFURCATION, AND OTHER ORDERING OF PROOF

The Parties do not see a need for the case to be bifurcated or otherwise

severed at this time.

## XI. TRIAL COUNSEL

The Parties expect to be represented by the following lead trial counsel:

- Plaintiffs: Leo Kittay of Fross Zelnick Lehrman & Zissu, P.C.
- Defendant: Ryan J. Stonerock and Henry L. Self III of Harder Stonerock LLP

DATED: October 19, 2026

**ADAMS, DUERK & KAMENSTEIN LLP**

By: *_/s/ Alec Johnson_*

ADAM KAMENSTEIN (SBN 225921)
ALEC JOHNSON (SBN 270960)
**ADAMS, DUERK & KAMENSTEIN LLP**
445 S. Figueroa St., Ste. 2450
Los Angeles, California 90071
Tel: (213) 408-4085
Email: adam.kamenstein@adkfirm.com
alec.johnson@adkfirm.com

LEO KITTAY (pro hac vice)
**FROSS ZELNICK LEHRMAN & ZISSU, P.C.**
151 W. 42nd Street, 17th Floor
New York, New York 10036
Tel: (212) 813-5900
Email: lkittay@fzlz.com

*Attorneys for Plaintiffs*

DATED: October 19, 2026

**HARDER STONEROCK LLP**

By: *_/s/ Henry L. Self III_*

RYAN J. STONEROCK
HENRY L. SELF III
HARDER STONEROCK LLP

*Attorneys for Defendant*
Cool Freakin' Genius LLC

Statement of Authority to File Per Civil L.R. 5-4.3.4(a)(2)(i): I attest that all signatories on this document and on whose behalf the filing is submitted concur in the filing's content and have authorized the filing of this document.

*/s/ Alec Johnson*
Alec Johnson